JOURNAL ENTRY AND OPINION
In this accelerated appeal, contemnor-appellant Michael T. Conway (Conway), an attorney, appeals from the finding of indirect criminal contempt entered against him by the trial court pursuant to R.C. 2705.02, .03, and .05.[1] For the reasons adduced below, we reverse and vacate the finding of contempt.
The record on appeal is limited, including only the transcript (with attached exhibits[2]) from the April 5, 2001 contempt hearing, and court file relating to the contempt citation in Special Cases Docket No. 75322.
On February 28, 2000, in the matter of Finelli v. Southwest Airlines, Cuyahoga County Common Pleas Court, General Division, Case No. CV-411616, the trial court (Judge Eileen Gallagher[3]) conducted a status hearing in open court which was attended by counsel for the parties. See Defendant's Exhibit B. Counsel for Mr. Finelli was attorney Conway. During this proceeding, Conway stated when questioned by the court that he was a Captain in the Marine Corps, yet the trial court noted that she was concerned that Conway had been misrepresenting his military service when Conway signed filings and correspondence with the court as being a retired Captain with the United States Marine Corps. See Defendant's Exhibit B, at 5. Her apprehension was prompted as a result of the concerns of her scheduler (a former Lieutenant in the United States Air Force) and a court bailiff (a retired Lieutenant Colonel in the United States Army), who were suspicious that Conway had not served in the Marine Corps. Id. at 3-7. As a result of these concerns, and instead of simply confronting Conway with her misgivings in an informal setting and asking for corroboration of Conway's military service, the judge performed an investigation of Conway's military service record by taking it upon herself to write a letter to the Commandant of the Marine Corps at Marine Corps Headquarters in Washington, D.C., inquiring as to whether Conway had ever been in the Marine Corps and whether Conway was eligible to use the title of a retired Captain.[4] In response to this letter, an office clerk at Headquarters, Marine Corps, with the rank of Corporal, faxed, according to the court, a response indicating that no Michael T. Conway ever held the rank of Captain in the Marine Corps. Id. at 8. Having announced this finding to the assembled persons in the courtroom, the trial court then commenced a hearing which consisted of a rambling collection of historical facts surrounding selected Marine Corps battle casualty statistics throughout history, and her own father's experience as a Sergeant in the Fifth Marine Division during World War II and his having been wounded during the battle for the island of Iwo Jima, recovering from his wounds, and later taking part in the military occupation of Japan. Id. at 8-10. The court then stated:
* * *
 That, Mr. Conway, is a true story of a Marine. They go down. They get back up and they continue to fight. Mr. Conway, I am the daughter of a Marine. I live with a Marine, and Mr. Conway, to paraphrase Senator Lloyd Bensen (sic), You, sir, are no Marine. (Defendant's Exhibit B, at 10.)
* * *
The court next expounded on further historical anecdotes concerning the Marine Corps, phrases associated with Marine Corps personnel and battle history, the history of the Marine Corps Anthem, the use of the term leatherneck,[5] and other assorted facts. See Defendant's Exhibit B, at 10-12.
The court then proceeded to introduce a number of men who were attending the proceedings, obviously at the behest of the court. Judge John Angelotta, the first person introduced by the court, recounted under the judge's questioning that he had been a U.S. Navy medical corpsman attached to a Marine unit during World War II, and that he considered himself a Marine. Id. at 12. The court then introduced Mr. Higgins, who stated that he served in the Marine Corps from 1940 to 1946. Id. at 12-13. Next, the court introduced Mr. Wegas, who stated that he served in the Marine Corps from 1951 to 1953. Id. at 13. The court then introduced Mr. Walsh, who stated that he served in the Marine Corps from 1961 to 1964. Id. Finally, the court introduced Mr. Fields, who stated that he served in the Marine Corps from 1964 to 1966. Id.
After hearing from Mr. Fields, the court continued:
 THE COURT: Thank-you, sir. These are Marines, Mr. Conway. Your false representations only serve to denigrate these Marines present who are United States Marines and who have fought for rights and freedom and to keep our honor clean and who are proud to claim the title of United States Marine. You should be ashamed, Mr. Conway, and based upon all of this, this information will be sent to the Ohio Supreme Court for disciplinary action for your lying to this Court, and misrepresenting yourself. Before you ask, Mr. Conway, this Court is recusing itself from any further proceedings on the matter of Finelli v. Southwest Airlines. This court is in recess.
 MR. CONWAY: May I say, Your Honor, something? Your Honor
THE COURT: No.
 MR. CONWAY: You thoroughly insulted me. _ _ _
(Thereupon, the proceedings were concluded.) Defendant's Exhibit B, at 13-14.
Following this proceeding, an understandably irate Conway telephoned Judge Gallagher's law clerk at the law clerk's office. According to Conway, he spoke in a normal tone of voice and only sought an opportunity to disprove the judge's erroneous contentions by offering his military service records[6] for review, and obtain a retraction and an apology for the remarks made by the trial judge. Tr. 20. According to the law clerk, whose office is located twelve floors below that of Judge Gallagher's courtroom, Conway expressed himself in a harsh tone on the telephone and requested that she relay a message to Judge Gallagher. Tr. 9. That message consisted of the following recollection by the law clerk:
 Mr. Conway continued with his rage using numerous profanities directed at Judge Gallagher and specifically stating that he was `going to sue the f**king judge' and that the judge `had not heard the f**king last of him.' Tr. 10.
Additionally, the law clerk remembered that Conway had called the judge a f**king bitch and that she should not be on the bench. Tr. 12.
The law clerk related the fact and content of this telephone call to Judge Gallagher on February 28, 2001, who then had the law clerk prepare an affidavit. See State's Exhibit 1 attached to the contempt hearing transcript. This affidavit was used as the basis for the opening of a contempt proceeding by the administrative judge of the trial court, Judge Richard McMonagle[7], under Special Cases Docket No. 075322 [8] on April 5, 2001. Significantly, there is no formal written charge of contempt in the record or entered on the court's journal; the only entries on the journal of the contempt action is the judgment entry of contempt and the notice of appeal from that order.
At the April 5, 2001, indirect criminal contempt[9] hearing conducted by Judge McMonagle, Conway apologized for his actions and, with the acquiescence of the prosecutor, plead no contest to the charge of contempt. The administrative judge fined Conway $50 for the criminally contemptuous behavior, to-wit, the impertinent remarks made to the law clerk with regard to the fallible Judge Gallagher.
Conway's appeal from this finding of criminal contempt presents four assignments of error for review. The first assignment of error provides the following:
 I THE COURT ERRED BY FINDING THAT THE APPELLANT'S CONDUCT AMOUNTED TO CONTEMPT OF COURT AS THE SAME IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
The effect of a plea of no contest is provided in Crim.R. 11(B)(2), as follows:
 (2) The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding. (Italicization added.)
By pleading no contest, thereby admitting to the truth of the facts alleged in the purported contempt citation, Conway is precluded from now asserting a claim against the weight of the evidence. City of Broadview Heights v. Burrows (Oct. 4, 2001), Cuyahoga App. No. 79161, unreported, 2001 Ohio App. LEXIS 4479 at 7-8.
The first assignment of error is overruled.
The second assignment provides the following:
 II THE COURT ERRED BY FINDING THAT THE APPELLANT' (SIC) CONDUCT AMOUNTED TO CONTEMPT OF COURT AS NO EVIDENCE WAS OFFERED IN HEARING TO SHOW THAT THE ELEMENTS OF OHIO R.C. 2705.02 WERE VIOLATED BY THE APPELLANT.
In this assignment, appellant challenges the sufficiency of evidence. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Sanders (2001), 92 Ohio St.3d 245, 254, citing Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2788-2789,61 L.Ed.2d 560, 573, and State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
At the contempt hearing herein, the trial court was required to investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. R.C. 2705.05(A). Guilt in a criminal contempt situation must be proven beyond a reasonable doubt. See Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 251.
In State v. Wood (1996), 112 Ohio App.3d 621, 626, the court emphasized that in a no contest situation, a conviction must be predicated on factual matter presented to the court which support all the essential elements of the offense. Further, a trial court is not permitted to accept a plea of no contest when the facts recited to the court establish that the defendant could not be convicted of the offense charged. City of Cleveland v. Technisort, Inc. (Cuyahoga, 1985), 20 Ohio App.3d 139, paragraph two of the syllabus. Thus, in the present matter, this court must determine whether the facts, as admitted by Conway through his no contest plea and presented at the hearing by the prosecution, are sufficient to support a conviction for indirect criminal contempt. State v. Wood, supra.
A finding of indirect criminal contempt requires two elements. First, there must be a demonstration of there being applicable one of the seven divisions contained in R.C. 2705.02.[10] Second, the contemptuous act must obstruct the immediate administration of justice. Conway's three remarks to the law clerk concerning Judge Gallagher do not fall within any of the acts contained within R.C. 2705.02(A)-(H). The only conceivable category in R.C. 2705.02 which might be applicable is division (B), which concerns [M]isbehavior of an officer of the court in the performance of official duties, or in official transactions. However, division (B) is inapplicable because Conway's heated remarks to the law clerk, while spoken by an officer of the court, were not uttered in the performance of Conway's official duties toward the court or in an official transaction. These comments were ex parte in nature and unrelated in substance to the Finelli case; this was a personal matter. Furthermore, Conway's three remarks to the law clerk concerning Judge Gallagher, while imprudent and offensive to the listener and Judge Gallagher, and taken in a light most favorable to the prosecution, in no way affected the immediate administration of justice at the court. Accordingly, contempt was not sufficiently proven and the resulting acceptance of the no contest plea and subsequent conviction was an abuse of discretion by the trial court.
The second assignment of error is sustained.
The third assignment of error provides the following:
 III THE CONDUCT OF THE APPELLANT WAS PROTECTED SPEECH UNDER THE FIRST AMENDMENT TO THE U.S. CONSTITUTION AS IT ADDRESSED A DEMAND FOR A RETRACTION OF SLANDER AND AN APOLOGY FROM COMPLAINING JUDGE WHO ENGAGED IN A PERSONAL ATTACK AGAINST THE APPELLANT IN A CASE SHE RECUSED HERSELF FROM.
By virtue of the resolution of the second assignment of error, supra, this assignment is moot and need not be discussed. See App.R. 12(A)(1)(c).
The third assignment of error is overruled as moot.
The fourth, and final, assignment of error provides the following:
 IV THE CONVICTION OF CONTEMPT IS VOID FOR WANT OF FILING OF A CHARGE OF CRIMINAL CONTEMPT WITH THE CLERK OF COURT PRIOR TO HEARING AND EFFECTING VALID SERVICE.
R.C. 2705.03 provides the following in pertinent part:
 In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, * * *.
The journal in Special Cases Docket No. 75332 contains no charge in writing * * * filed with the clerk of the court, and no entry thereof on the journal. Ordinarily, the failure of the trial court to provide notice of the charges against a contemnor prior to hearing pursuant to R.C.2705.03 requires a reversal of the contempt finding and a remand of the matter for a new contempt hearing. See City of Cleveland v. Geraci (Dec. 16, 1993), Cuyahoga App. No. 64075, unreported, 1993 Ohio App. LEXIS 5997 at 10, citing Weiland v. Industrial Commission of Ohio (1956),166 Ohio St. 62, In re Davis (1991), 77 Ohio App.3d 257, and In re: Contempt of John Tremsyn (Mar. 9, 1989), Cuyahoga App. No. 55835, unreported; see also, City of Garfield Heights v. Stefaniuk (Cuyahoga, 1998), 127 Ohio App.3d 293, 297. However, because Conway's remarks to the law clerk were not contemptuous on their face, see the second assignment of error, supra, a remand for a new hearing subsequent to a formal charge of contempt entered on the journal, is unnecessary.
The fourth assignment of error is sustained.
Judgment reversed and vacated.
It is, therefore, considered that said appellant, Michael T. Conway, recover his costs herein from the State of Ohio.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
FRANK D. CELEBREZZE, JR., J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] An accelerated appeal is authorized pursuant to App.R. 11.1 and Loc.App.R. 11.1. The purpose of an accelerated docket is to allow an appellate court to render a brief and conclusory decision.
[2] These exhibits include the following:
 (1) State's Exhibit 1 affidavit of Judge Gallagher's law clerk;
 (2) Defendant's Exhibit A a 1986 reference letter for Conway from then Lt. Col. J.L. Jones, Jr.;
 (3) Defendant's Exhibit B transcript in the case of Finelli v. Southwest Airlines, infra;
 (4) Defendant's Exhibit C certified copy of Conway's DD-214;
 (5) Defendant's Exhibit D photocopy of Conway's 1995 honorable discharge as a Captain in the United States Marine Corps.
[3] In naming the judge by name, such practice is implemented in this particular case because, with two trial court judges involved in the proceedings which led up to the finding of contempt, the reference is essential to clarify or explain the role of such person in the course of said proceedings. See Loc.App.R. 21(C).
[4] This letter, and its faxed response, is not in the record on appeal.
[5] The use of the term leatherneck for a Marine stems from the American Revolutionary War when Marines, who were stationed aboard naval ships as security and marksmen, wore as part of their uniform a leather collar around their necks. This leather collar lessened the threat of injury from saber cuts during close combat.
[6] Conway's DD-214, issued by the Marine Corps upon his honorable discharge from active duty service, reflects that Conway served on active duty from May 15, 1983 to January 1, 1987 as a First Lieutenant, and was transferred to the Marine Corps Reserves. See Defendant's Exhibit C. Conway was honorably discharged from the Marine Corps Reserves as a Captain on January 31, 1995. See Defendant's Exhibit D.
[7] See fn. 3, supra.
[8] The Special Cases Docket is authorized pursuant to Rule 5(D) of the Cuyahoga County Common Pleas Court, General Division.
[9] Indirect criminal contempt is a contemptuous act which occurs outside the presence of the court and which affects the due and orderly administration of justice. In re Lands (1946), 146 Ohio St. 589; R.C.2705.02.
[10] R.C. 2705.02, Acts in Contempt of Court, provides:
 A person guilty of any of the following acts may be punished as for a contempt:
 (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer;
 (B) Misbehavior of an officer of the court in the performance of official duties, or in official transactions;
 (C) A failure to obey a subpoena duly served, or a refusal to be sworn or to answer as a witness, when lawfully required;
 (D) The rescue, or attempted rescue, of a person or of property in the custody of an officer by virtue of an order or process of court held by the officer;
 (E) A failure upon the part of a person recognized to appear as a witness in a court to appear in compliance with the terms of the person's recognizance;
 (F) A failure to comply with an order issued pursuant to section 3109.19 or 3111.81 of the Revised Code;
 (G) A failure to obey a subpoena issued by the department of job and family services or a child support enforcement agency pursuant to section 5101.37
of the Revised Code;
 (H) A willful failure to submit to genetic testing, or a willful failure to submit a child to genetic testing, as required by an order for genetic testing issued under section 3111.41 of the Revised Code.