[Cite as *State v. Thurman*, 2016-Ohio-3002.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 2015CA0010 |
| GARRY THURMAN | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Coshocton County Court of Common Pleas, Case No. 2014CR0091

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT ENTRY:     May 13, 2016

APPEARANCES:

For Plaintiff-Appellee

CHRISTIE M.L. THORNSLEY
Assistant Prosecuting Attorney,
Coshocton County
318 Chestnut Street
Coshocton, Ohio 43812

For Defendant-Appellant

JEFFREY G. KELLOGG
Assistant Public Defender,
Coshocton County
239 North Fourth Street
Coshocton, Ohio 43812

*Hoffman, J.*

{¶1} Defendant-appellant Garry Thurman appeals the January 12, 2015 Judgment Entry denying his motion to suppress and his subsequent conviction and sentence entered by the Coshocton County Court of Common Pleas. Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On July 17, 2014, Deputy Chris Johnson of the Coshocton County Sheriff's Office responded to a call of a hit-and-run accident in the parking lot of the New York Deli in the City of Coshocton. He learned Appellant had been involved in the accident, and had not wanted a police report done. Rather, Appellant provided the other vehicle's owner with his name, stating he would pay for the damage, but did not have insurance. When the other owner stated he wanted a police report done anyway, Appellant left the scene. Deputy Johnson dispatched Appellant's information to Deputy Ernie Snyder of the Coshocton County Sheriff's Office.

{¶3} Deputy Ernie Snyder was on road patrol on the date of the incident, and went to Appellant's residence. He observed the suspect vehicle, and identified the same pursuant to the license plate number and make and model of the vehicle. Deputy Snyder noted damage to the vehicle, including fresh paint transfer on the left front of the vehicle. He went to Appellant's door and knocked.

{¶4} Deputy Snyder was familiar with Appellant, and observed him sitting on the porch across the street from his residence. Deputy Snyder proceeded to cross the street to speak with Appellant who was sitting on the front porch step. Deputy Snyder

engaged Appellant in conversation from a few feet away. Deputy Snyder observed Appellant was intoxicated and smelled a strong odor of alcohol.

{¶5} Deputy Snyder asked Appellant about the accident, and Appellant responded it was none of the officer's "f'ing business" and "You're not the fucking law." Appellant screamed "loud enough for the whole block to hear him", used profanity in front of teenagers sitting on the porch, and was warned the officer would place him under arrest for disorderly conduct. A lady then came outside and took the teenagers inside.

{¶6} The officer again inquired as to the accident at the New York Deli. Appellant called Deputy Snyder a "fucking nigger" and told him he was not going to talk to him and was going to get him fired. Deputy Snyder is Caucasian, while Appellant is African-American.

{¶7} Appellant was placed under arrest. A routine pat down search was conducted incidental to the arrest. A keychain was found on Appellant's person with a utility knife and a pill container containing prescription medication.

{¶8} On August 15, 2014, Appellant was indicted by the Coshocton County Grand Jury on two counts of possession of a controlled substance, in violation of R.C. 2925.11(A), a felony of the fifth degree. On October 31, 2014, Appellant filed a motion to suppress evidence. The trial court conducted a hearing on the motion on December 10, 2015. Via Judgment Entry of January 12, 2015, the trial court denied the motion to suppress.

**{¶9}** The matter proceeded to a jury trial on June 18, 2015, and Appellant was convicted of the charges. A sentencing hearing followed on July 20, 2015.  The trial court imposed sentence of nine months on each count to be served concurrently.

**{¶10}** Appellant appeals, assigning as error,

**{¶11}** "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE."

I.

**{¶12}** In the sole assignment of error, Appellant argues the trial court erred in denying Appellant's motion to suppress. Specifically, Appellant maintains Deputy Snyder lacked sufficient probable cause to arrest him for aggravated disorderly conduct.

**{¶13}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 486 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial

court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist.1993); *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶14} Appellant was arrested for aggravated disorderly conduct, in violation of R.C. 2917.11(A)(2)(E)(3)(a), which reads,

(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

\*\*\*

(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person;

\*\*\*

(E)\*\*\*

(3) Disorderly conduct is a misdemeanor of the fourth degree if any of the following applies:

(a) The offender persists in disorderly conduct after reasonable warning or request to desist.

{¶15} Deputy Ernie Snyder testified at the suppression hearing,

BY MR. KELLOGG:

Q. You indicated that you have had encounters with Mr. Thurman before?

A. Yes, sir.

Q. And his colorful language is not uncommon?

A. No, sir.

Q. And did you find it particularly offensive to you?

A. Absolutely.

Q. And why is that?

A. Because I don't appreciate being called a nigger?

Q. Okay.

Suppression Hearing, Tr. at 36.

{¶16} In *State v. Hoffman*, 57 Ohio St.2d 129, 133, 387 N.E.2d 239 (1979), the Ohio Supreme Court held,

Therefore, a person may not be punished under R.C. 2917.11(A)(2) for "recklessly caus(ing) inconvenience, annoyance, or alarm to another," by making an "offensively coarse utterance," or "communicating unwarranted and grossly abusive language to any person," unless the words spoken are likely, by their very utterance, to inflict injury or provoke the average person to an immediate retaliatory breach of the peace.

{¶17} In *State v. Beamer*, Coshocton App. No. 11CA14, 2012-Ohio-2222, this Court held,

Punishment for disorderly conduct based on spoken words is prohibited unless those words amount to 'fighting words.' See *State v. Hoffman* (1979), 57 Ohio St.2d 129, 133, 387 N.E.2d 239; *State v. Wood*

(1996), 112 Ohio App.3d 621, 627, 679 N.E.2d 735. 'Fighting words' are those words that are likely by their very utterance to inflict injury or to incite an immediate breach of the peace. *State v. Thompson,* 95 Ohio St.3d 264, 265, 767 N.E.2d 251, 2002–Ohio–2124, citing *Chaplinsky v. New Hampshire* (1942) 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031. In determining whether language rises to the level of 'fighting words,' courts look at the circumstances surrounding the words. *Hamilton v. Johnson* (Dec. 3, 1999), Butler App. No. CA99–02–025, 1999 WL 1087024, *4, citing *State v. Presley* (1992), 81 Ohio App.3d 721, 724, 612 N.E .2d 353.

This court has stated that 'profane words specifically and intentionally directed to a * * * [police] officer usually constitute fighting words, while an inappropriate and vulgar commentary about the situation, without more, is not punishable.' *Johnson* at *4, citing *Wood* at 627–629, 679 N.E.2d 735. Words directed to a police officer that courts have found to be 'fighting words' include, 'What are you going to do, asshole, pig? You going to arrest me?' *State v. Dickey* (1991), 75 Ohio App.3d 628, 630, 600 N.E.2d 365; 'I hate all of you fucking prick-ass cops * * * get out of my way you fucking prick-ass cops,' *Cincinnati v. Karlan* (1974), 39 Ohio St.2d 107, 314 N.E.2d 162, paragraph three of the syllabus; and 'You're a fucking jackass [.]' *Johnson* at *4. Words directed to a police officer that, while vulgar, courts have not found to be 'fighting words' include, 'stay away from the fucking door, get the fuck out of here,' *Kent v. Kelley* (1975), 44 Ohio St.2d 43, 43, 337 N.E.2d 788; 'the police are worthless,

this is f[ucking] bullshit,' *Toledo v. Grince* (1989), 48 Ohio App.3d 126, 127, 548 N.E.2d 999; and 'go ahead, tow the motherfucker[.]' *State v. Lamm* (1992), 80 Ohio App.3d 510, 514, 609 N.E.2d 1286." *Middletown v. Carpenter,* Butler App. No. CA2006–01–004, 2006–Ohio–3625, ¶ 14–15.

***

Ohio consistently cautions that law enforcement officers must have a thicker skin than the public as a whole. However, in the facts set forth sub judice, appellant's offensive language was made to three EMS personnel and the gathering bystanders. We conclude appellant's words were offensive not only to the EMS personnel, but created an annoyance that caused a crowd to gather. We conclude there was sufficient evidence for the trial court to find appellant guilty of disorderly conduct.

{¶18} We distinguish the facts presented herein from those presented in *Beamer.* Here, the young people present were taken inside prior to the situation escalating.  Further, the testimony of Deputy Snyder himself demonstrates he was not incited to violence by the words; rather, he simply did not appreciate being called a "fucking nigger."  Further, there is no testimonial evidence the incident caused a crowd to gather or incited anyone to act.  As set forth above, law enforcement officers are expected to have thicker skin than the public as a whole, and the average Caucasian police officer would not be expected to be so offended by the language, even though offensive, such that the very utterance of the language would be considered inciteful or cause an immediate breach of the peace.

**{¶19}** Accordingly, we find Deputy Snyder lacked probable cause to arrest Appellant for aggravated disorderly conduct; therefore, the trial court erred in denying Appellant's motion to suppress.

**{¶20}** Appellant's sole assignment of error is sustained.

**{¶21}** The January 12, 2015 Judgment Entry of the Coshocton County Court of Common Pleas is reversed and the matter remanded to the trial court for further proceedings according to this Opinion and the law.

By: Hoffman, J.

Gwin, P.J. and

Baldwin, J. concur