[Cite as *State v. Merillat*, 2020-Ohio-3825.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

State of Ohio/City of Bryan

    Appellee

v.

Daniel G. Merillat

    Appellant

Court of Appeals Nos. WM-19-014
WM-19-015

Trial Court Nos. CRB1900416
CRB1900254

**DECISION AND JUDGMENT**

Decided: July 24, 2020

* * * * *

Rhonda L. Fisher, Bryan City Attorney, for appellee.

Anthony J. Richardson II, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} In this consolidated appeal, appellant, Daniel Merillat, appeals the August 7, 2019, and August 19, 2019 judgment entries of the Bryan Municipal Court, finding him guilty in case No. CRB1900254 of criminal trespass in violation of R.C. 2911.21(A)(1), a misdemeanor of the fourth degree, and guilty in case No. CRB1900416 of disorderly

conduct in violation of R.C. 2917.11(A)(2) and (E)(3), a misdemeanor of the fourth degree. For the reasons that follow, we affirm, in part, and reverse, in part.

## I. Facts and Procedural Background

{¶ 2} The two cases in this consolidated appeal involve different facts and will be described separately.

## A. Case No. CRB1900254—Criminal Trespass

{¶ 3} On April 11, 2019, appellant was charged with criminal trespass in violation of R.C. 2911.21(A)(1) for entering his ex-girlfriend's rental property. On May 2, 2019, the arraignment was held, and appellant pleaded not guilty. At his arraignment, appellant requested counsel due to his indigency, and counsel was appointed. Thereafter, a bench trial was held on July 23, 2019.

{¶ 4} At trial, the testimony revealed that on December 27, 2018, appellant's ex-girlfriend, Joni Snow, made a claim to her landlord that appellant kicked in and damaged the door to her rental property. Following this incident, the landlord told Snow that due to the alleged damage, appellant was no longer allowed back on the property. The landlord also requested that the police notify appellant of his prohibition on entering Snow's property, which the police relayed to appellant.

{¶ 5} Appellant and Snow have a daughter together. On April 9, 2019, appellant had visitation with his daughter from 5:00 p.m. to 7:00 p.m., and Snow requested that the exchange for this visitation occur at the local police station. Around the scheduled time for the exchange, Snow sent a text to appellant explaining that she was late to drop off

2.

their daughter at the police station because their daughter needed to use the restroom. Appellant then sent a text back to Snow asking if he should head over to her house, which was only a few blocks away. Although he never got a response, appellant drove to her house. Despite appellant being aware of the landlord not wanting appellant on the rental property, appellant testified that he and Snow have exchanged their daughter at each other's houses since the incident on December 27, 2018.

{¶ 6} In regards to the criminal trespass charge, appellant testified he only exchanged his daughter in the street in front of the rental property. However, Snow testified that when she came out of the restroom with their daughter, appellant was in the home. After appellant left with their daughter, Snow reported the trespass to the police. When appellant returned with his daughter to the police station at 7:00 p.m. for the exchange, Officer Phillips questioned him about going to Snow's residence. Appellant argues that the officer was unclear in his question, and while he admitted to going to her residence, he did not know that the officer was referring to actually going onto the property.

{¶ 7} After the trial, appellant was found guilty of criminal trespass. The final judgment entry was entered on August 18, 2019, sentencing appellant to 30 days in jail, with 25 of those days suspended, and imposing a $150 fine.

## B. Case No. CRB1900416—Disorderly Conduct

{¶ 8} Meanwhile, on June 11, 2019, appellant was charged with disorderly conduct in violation of R.C. 2917.11(A)(2) and (E)(3), for "flipping off" his daughter's

3.

babysitter after being warned to have no communication with her. Arraignment was held on July 3, 2019, at which appellant pleaded not guilty. Also at the arraignment, appellant requested appointed counsel, volunteering that counsel had been appointed in the criminal trespass case, but that appellant now had a small job earning $12 per hour. The court inquired where appellant was working at, and how many hours a week. When appellant responded that he was working 40 hours per week, the trial court declared that appellant would need to retain his own counsel. Appellant was not afforded an opportunity to file an affidavit of indigency or list expenses.

{¶ 9} Consequently, appellant proceeded to trial without a lawyer. Notably, the trial court never engaged appellant in a colloquy or asked appellant to formally waive his right to counsel. At the August 6, 2019 trial, the testimony revealed the following.

{¶ 10} On May 23, 2019, Sheriff's Deputy Jason Randall investigated a harassment claim made against appellant by Charley Jaggers, Snow's friend and the babysitter of Snow's and appellant's daughter. The claim alleged that appellant had sent "threatening" Facebook messages to her and her boyfriend, Jeffrey Sines, followed them, and stopped at their home. As a result, appellant was warned by the sheriff's department to have no further contact with Jaggers.

{¶ 11} Concerning the June 11, 2019 "flipping off" incident, Jaggers testified that she was driving home with her daughters when she saw appellant driving in front of her. Jaggers testified that as she parked and got her children out of the car, she saw appellant driving back the opposite way. Jaggers used her cell phone to videotape appellant as he

4.

drove past, gesturing at her with his middle finger. The cell phone video was admitted as evidence in the trial. Sines, who was standing on the porch at the time, also testified that appellant drove past the home and flipped off Jaggers.

{¶ 12} Finally, Sheriff's Deputy Douglas Moser testified that on June 11, 2019, he received a complaint regarding appellant flipping off Jaggers. Upon searching through previous reports, Moser found that appellant previously had been warned to have no further contact with Jaggers. Moser then reviewed the video captured by Jaggers, and testified that it appeared as though appellant stuck his middle finger up as he passed by.

{¶ 13} Following the state's evidence, appellant was asked if he wished to testify under oath and be subject to cross-examination. Appellant then took the stand. During his rambling and disjointed testimony, appellant explained that he had not seen his daughter for the entire month of May, and that Snow was violating court orders by keeping his daughter from him, and now was trying to get criminal convictions on his record for custody purposes. Appellant testified that on June 11, 2019, he was driving by to catch a glimpse of his daughter, but he did not know that Jaggers lived there. Rather, he only knew that he had seen Snow's car there previously. Appellant admitted he drove by the house for a second time, but does not recall flipping Jaggers off, explaining that his hand was up blocking her from his sight, but further claiming that Jaggers was flipping him off while she was yelling that she was going to call the cops.

{¶ 14} Appellant then called Sines back to the stand. Appellant questioned Sines about a previous encounter between himself, Sines, Jaggers, and Snow. He then briefly

5.

questioned Sines regarding the circumstances on June 11, 2019, such as the distance to the road, and whether Jaggers was wearing anything that would change her appearance. Concluding his questioning, appellant admitted that he could not afford to hire a lawyer and did not know what he was doing, so he had no further questions.

{¶ 15} After the presentation of the evidence, the trial court found appellant guilty, explaining that it had no doubt that appellant flipped off Jaggers. The court sentenced appellant to a suspended jail sentence of 30 days, and imposed costs and a $150 fine. The court further forbade appellant from driving on the road on which Jaggers lives.

## II. Assignments of Error

{¶ 16} On September 4, 2019, appellant filed a pro se notice of appeal. On October 31, 2019, this court sua sponte appointed appellate counsel and granted ten days for an amended notice of appeal to be filed. In this consolidated appeal, appellant now raises four assignments of error for our review:

1. THE TRIAL COURT COMMITTED ERROR BY FAILING TO APPOINT COUNSEL WHERE APPELLANT, AMONG OTHERS, WAS UNABLE TO PAY, DID NOT WAIVE HIS RIGHT TO COUNSEL, AND WAS FACING IMPRISONMENT AS A SENTENCE.

2. THE TRIAL COURT COMMITTED ERROR BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF DISORDERLY CONDUCT OR CRIMINAL TRESPASS.

6.

3. THE TRIAL COURT COMMITTED ERROR BECAUSE APPELLANT'S CONVICTIONS FOR DISORDERLY CONDUCT AND CRIMINAL TRESPASS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

4. THE TRIAL COURT COMMITTED ERROR BY IMPOSING FINES ON APPELLANT WITHOUT FINDING HE HAD THE CURRENT OR FUTURE ABILITY TO PAY.

### III. Analysis

{¶ 17} Because this consolidated appeal involves assignments of error that apply to two different convictions, for ease of discussion, we will analyze each conviction and its attendant assignments of error separately.

### A. Case No. CRB1900254—Criminal Trespass

{¶ 18} In appellant's second assignment of error, he argues that his conviction for criminal trespass is based upon insufficient evidence. "Sufficiency of the evidence is a determination of adequacy and a court must consider whether the evidence was sufficient to support the conviction as a matter of law." *State v. Moore*, 6th Dist. Lucas No. L-15-1211, 2016-Ohio-3506, ¶ 8, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The proper analysis is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Williams*, 74 Ohio

7.

St.3d 569, 576, 660 N.E.2d 724 (1996), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 19} Here, appellant was convicted of criminal trespass in violation of R.C. 2911.21(A)(1), which provides, "No person, without privilege to do so, shall do any of the following: (1) Knowingly enter or remain on the land or premises of another." Appellant argues that the evidence in this case was insufficient to establish criminal trespass because even assuming that he entered Snow's residence, the evidence shows that he had frequently picked up his daughter from Snow's residence, and that Snow often invited him into the residence, even after the landlord expressed his desire that appellant not be on the property. We disagree, and we find that the evidence was sufficient to support appellant's conviction.

{¶ 20} In this case, Snow testified that she did not want appellant to be in her residence, and that he had not been invited into the home. Snow also testified that she had arranged for the drop off to occur at the police station because of previous fights and arguments between the two. Further, appellant previously had been warned not to come onto the property by the sheriff's department. When viewing this evidence in a light most favorable to the prosecution, we hold that a rational trier of fact could have found beyond a reasonable doubt that appellant knowingly entered the premises of another without the privilege to do so. Therefore, appellant's conviction for criminal trespass is not based upon insufficient evidence.

8.

{¶ 21} Accordingly, appellant's second assignment of error is not well-taken as to case No. CRB1900254.

{¶ 22} In his third assignment of error, appellant argues that his conviction for criminal trespass was against the manifest weight of the evidence. "A claim that a jury verdict is against the manifest weight of the evidence requires an appellate court to act as a 'thirteenth juror.'" *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.), citing *Thompkins* at 387. When reviewing a manifest weight claim,

> [t]he court, reviewing the entire record, weighs the evidence and all
> reasonable inferences, considers the credibility of witnesses and determines
> whether in resolving conflicts in the evidence, the jury clearly lost its way
> and created such a manifest miscarriage of justice that the conviction must
> be reversed and a new trial ordered. The discretionary power to grant a
> new trial should be exercised only in the exceptional case in which the
> evidence weighs heavily against the conviction.

*State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, quoting *Thompkins* at 387.

{¶ 23} In support of his assignment of error, appellant contends that Snow is conspiring to remove appellant from his daughter's life, and that she falsely testified that he entered her residence on April 9, 2019. Appellant claims that, to the contrary, he did not enter the residence, but remained in the roadway. Furthermore, appellant argues that

9.

the evidence shows that he did not knowingly enter without privilege because the parties had historically exchanged their daughter at each other's houses.

{¶ 24} Ultimately, this case presents a "he said," "she said" dispute. Snow testified that she requested that the exchange occur at the police station because of previous fights and arguments, that she did not invite appellant into her home on April 9, 2019, and yet appellant nonetheless did enter her home on that day. Appellant, on the other hand, testified that he had previously been invited into the home for exchanges, that Snow had not told him that he could not come onto the property, and that he did not even enter the property on April 9, 2019. Upon our review of the record, we do not find either party to be so credible, and the other so un-credible, that we can say that the trier of fact clearly lost its way and committed a manifest miscarriage of justice. This is not the exceptional case where the evidence weighs heavily against the conviction. Therefore, we hold that appellant's conviction for criminal trespass is not against the manifest weight of the evidence.

{¶ 25} Accordingly, appellant's third assignment of error is not well-taken as to case No. CRB1900254.

{¶ 26} Finally, in his fourth assignment of error, appellant argues that the trial court erred when it imposed fines upon him without determining that he had the current or future ability to pay those fines. R.C. 2929.28(A)(2)(iv) authorizes the trial court to impose a fine of not more than $250 for a misdemeanor of the fourth degree. Relevant here, R.C. 2929.28(B) provides, "If the court determines a hearing is necessary, the court

10.

may hold a hearing to determine whether the offender is able to pay the financial sanction imposed pursuant to this section or court costs or is likely in the future to be able to pay the sanction or costs." If the offender is determined to be unable to pay, the trial court shall consider whether to impose community service in lieu of the fine or court costs. *Id.* "Ohio courts have interpreted R.C. 2929.28(B) to mean that a hearing to determine ability to pay is not required; however, there must, at minimum, 'be some evidence in the record that the court considered the defendant's present and future ability to pay the sanction imposed.'" *State v. Rohda*, 6th Dist. Fulton No. F-06-007, 2006-Ohio-6291, ¶ 15, quoting *State v. Riegsecker*, 6th Dist. Fulton No. F-03-022, 2004-Ohio-3808, ¶ 11.

{¶ 27} The docket reflects that a sentencing hearing was held in this case at 2:00 p.m. on August 14, 2019. However, a transcript of the sentencing hearing was not made part of the record on appeal. Thus, we have no way to determine whether the trial court inquired into appellant's present and future ability to pay the $150 fine. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).

{¶ 28} Accordingly, appellant's fourth assignment of error is not well-taken as to case No. CRB1900254.

11.

**B. Case No. CRB1900416—Disorderly Conduct**

{¶ 29} Turning to appellant's conviction for disorderly conduct in case No. CRB1900416, because we find the second assignment of error dispositive, we will begin and end our analysis there.

{¶ 30} In his second assignment of error, appellant argues that his conviction for disorderly conduct was based upon insufficient evidence. R.C. 2917.11(A)(2) provides, "No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following: * * * (2) Making unreasonable noise or an offensively course utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person."

{¶ 31} In *State v. Hoffman*, 57 Ohio St.2d 129, 133, 387 N.E.2d 239 (1979), the Ohio Supreme Court stated that "a person may not be punished under R.C. 2917.11(A)(2) for 'recklessly caus(ing) inconvenience, annoyance, or alarm to another,' by making an 'offensively coarse utterance,' or 'communicating unwarranted and grossly abusive language to any person,' unless the words spoken are likely, by their very utterance, to inflict injury or provoke the average person to an immediate retaliatory breach of the peace." In reaching this conclusion, the court relied on free speech principles articulated by the United States Supreme Court that "no matter how rude, abusive, offensive, derisive, vulgar, insulting, crude, profane, or opprobrious spoken words may seem to be their utterance may not be made a crime unless they are 'fighting words.'" *Id.* at 131.

12.

{¶ 32} In Ohio, in cases where the defendant has been convicted of disorderly conduct for raising his or her middle finger at another, that conduct has invariably included accompanying abusive and obscene language. *See, e.g., State v. Wood*, 112 Ohio App.3d 621, 628, 679 N.E.2d 735 (11th Dist.1996) (defendant "approached the officers, provided officers the gesture of the middle finger, told the officers 'fuck you' and continued loud and abusive language for several minutes and the language continued upon several requests to [desist]"); *In re T.W.*, 3d Dist. Allen No. 1-12-16, 2012-Ohio-5938, ¶ 24-28 (juvenile held up two middle fingers towards either the police officer or another group of children, then "directed a stream of profane and abusive language towards the officers, made racially charged statements such as calling them 'white racists,' and made violent threats to the officers and their families"); *Akron v. Lorenzo*, 9th Dist. Summit No. 20475, 2001 WL 1142802, *4 (Sept. 26, 2001) (defendant screamed "Fuck you" and "Fuck Akron police," six or seven times, then when told to move along "looked [the officer] in the eye, gestured with his middle finger, and yelled 'Fuck you'"); *Brook Park v. Sewell*, 8th Dist. Cuyahoga No. 51449, 1987 WL 5661, *1 (Jan. 22, 1987) (defendant called officer "a mother fuckin prick and an asshole," "used his middle finger in an illustrative gesture," yelled "I will stick that ticket up your ass," and berated the officer with obscene language approximately 20 times).

{¶ 33} Here, in contrast, appellant's conduct consisted solely of driving past Jaggers' residence and raising his middle finger towards her, or "flipping her off." It is not alleged that appellant yelled, cursed, shouted obscenities, or uttered any offensive

language towards Jaggers. We find that the act of driving past someone and "flipping him or her off" from the roadway, by itself, is insufficient to provoke the average person to an immediate retaliatory breach of the peace. Therefore, we hold that the evidence of appellant's conduct in this case is insufficient to support a conviction for disorderly conduct under R.C. 2917.11(A)(2).

{¶ 34} Accordingly, appellant's second assignment of error is well-taken as it relates to case No. CRB1900416.

{¶ 35} Furthermore, because we hold that appellant's conviction for disorderly conduct is based upon insufficient evidence, appellant's remaining assignments of error as they relate to case No. CRB1900416 are moot.

### IV. Conclusion

{¶ 36} For the foregoing reasons, we find that substantial justice has not been done the party complaining, and the judgments of the Bryan Municipal Court are affirmed, in part, and reversed, in part. Specifically, the trial court's judgment convicting appellant of criminal trespass in case No. CRB1900254 is affirmed. The trial court's judgment convicting appellant of disorderly conduct in case No. CRB1900416 is reversed and vacated, and the case is ordered to be dismissed. The parties are ordered to share the costs of this appeal evenly pursuant to App.R. 24.

Judgments affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                                          _____
                                                                          JUDGE

Christine E. Mayle, J.

                                         _____
Gene A. Zmuda, P.J.                                               JUDGE
CONCUR.

                                         _____
                                                                          JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.