CITY OF TOLEDO, APPELLEE, *v.* GRINCE, APPELLANT.

(No. L-88-117 — Decided January 13, 1989.)

*Daniel Pilrose,* for appellee.
*John B. Spitzer,* for appellant.

*Per Curiam.* This matter is before the court on appeal from the March 17, 1988 judgment of the Toledo Municipal Court finding appellant, Michael W. Grince, guilty of violating Toledo Municipal Code Section 509.03 (disorderly conduct).

On November 9, 1987, appellant, the janitor and watchman for the Spitzer Building, requested that his manager summon the police to arrest a man present in the Spitzer Building lobby whom appellant had evicted from the building several weeks prior because the man had exposed himself. The police questioned the appellant, the suspect, and the building manager about the incident. However, because the officers had no basis upon which they could justify an arrest, they merely requested that the man leave the premises and he agreed to do so. As they were escorting the man to the door, appellant approached to inquire as the whether they were arresting the man. The officer responded that they could not because the man had as much right to be on the premises as appellant did. Conflicting testimony described the scene that insured.

Appellant contends that he said to the police, in essence, that it was not worthwhile to even call the police. Thereafter, appellant claims that he started to go downstairs to go back to work when one officer exclaimed that he would "show you what we're good for." Appellant testified that the officers then followed appellant downstairs, grabbed him, put a choke hold on him, handcuffed him, and took him to the police wagon. Appellant also testified that one of the officers remarked at that point that appellant had "evidently flunked civics class in high school."

The police officers, on the other hand, testified that appellant was agitated, excited, and spoke rapidly during the entire incident. Furthermore, they testified that appellant had said that "the police are worthless, this is f------ bullshit" loud enough that the crowd which had gathered could hear. One officer testified that he had told appellant to "hold up" so that he could talk to him. The officer believed appellant was attempting to flee because he swiftly walked to the stairs and ran down them to the basement. Therefore, the officers followed and again stated that they wished to talk to appellant. When appellant tried to pull away and stated that he did not have to talk to them, the officers placed him under arrest.

Other witnesses testified that they either did not hear any profanity or that while they were unsure, they did not remember anything flagrant.

Appellant was charged with and later convicted of violating Toledo Municipal Code Section 509.03(a)(2), and was fined $25. That section reads:

"(a) No person shall recklessly cause inconvenience, annoyance or alarm to another, by doing any of the following:

"* * *

"(2) Making unreasonable noise or offensively coarse utterance, gesture or display, or communicating unwarranted and grossly abusive language to any person, which by its very utterance or usage inflicts injury or tends to incite immediate breach of the peace."

Appellant sought an appeal from his conviction asserting the following single assignment of error:

"The trial court erred in finding appellant guilty of disorderly conduct in violation of Section 509.03 of the Municipal Code of the City of Toledo."

Appellant's basic argument is that his statements were protected under the First and Fourteenth Amendments

to the United States Constitution inasmuch as they do not constitute "fighting words." Appellee argues that the trial court properly found appellant's statements constituted "fighting words" because of the particular words used, appellant's belligerent conduct, and the fact that a crowd had gathered in the lobby.

While the First Amendment to the United States Constitution creates the right of free speech (which is made applicable to the states and their subdivisions through the Fourteenth Amendment), the exercise of that right is narrowly limited under certain circumstances. One situation where pure speech can be regulated by criminal statute is .where a certain class of speech, now commonly known as "fighting words," is involved. The rationale behind this limitation on the right of free speech is that where words incite an immediate breach of peace, their value as an expression of ideas or truth is outweighed by society's interests in maintaining order and morality. *Chaplinsky* v. *New Hampshire* (1942), 315 U.S. 568, 572. Thus, the government can suppress such speech as verbal conduct. *Id.* at 574. See, also, *Cantwell* v. *Connecticut* (1940), 310 U.S. 296, 308; *Cohen* v. *California* (1971), 403 U.S. 15; *Gooding* v. *Wilson* (1972), 405 U.S. 518; *Lewis* v. *City of New Orleans* (1974), 415 U.S. 130; and *Cincinnati* v. *Karlan* (1974), 39 Ohio St. 2d 107, 68 O.O. 2d 62, 314 N.E. 2d 162, certiorari denied (1974), 419 U.S. 1056.

The test for determining what words constitute "fighting words" is whether the words used would reasonably incite the average person to retaliate. *Chaplinsky* v. *New Hampshire, supra,* at 573. The Toledo Municipal Code has codified this standard and requires that the court find that the communication "inflicts injury or tends to incite an immediate breach of the peace." Furthermore, case law requires that the words be used as "fighting words," that is, used to describe a person or be directed at the person. *Cohen* v. *California, supra,* at 20; *Kent* v. *Kelly* (1975), 44 Ohio St. 2d 43, 73 O.O. 2d 230, 337 N.E. 2d 788. Therefore, our duty as an appellate court is to determine whether the trial court properly applied the ordinance to the facts in this case.

Since the trial court found appellant guilty of violating the ordinance, it is logical to presume that it found that appellant did use profanity when he stated that the police were worthless. Because this amounts to a question of fact, we cannot disturb that finding. However, we disagree with the trial court's conclusion that this statement constituted "fighting words."

In *Kent* v. *Kelly, supra,* the defendants used coarse epithets to tell the police to leave the area. The court held that such words did not constitute fighting words because they were not descriptive of any person or directed at that person in particular and were not such words that they would have provoked the average person. The court distinguished the case from an earlier case, *Cincinnati* v. *Karlan, supra,* where the defendants called the police names and used words to reflect hatred toward the officers. In that case, the court had held that such words constituted "fighting words" prohibited by statute because they were spoken in public, were intentionally directed toward the police officers present, and were likely to incite the average person.

In the case *sub judice,* appellant's statement did not concern the officers individually. Rather, it was a generalized derogatory remark as to appellant's belief that the police were ineffective. It is not unreasonable to expect that a police officer should be able to withstand such insults without

retaliating. See *Lewis* v. *City of New Orleans* (1972), 408 U.S. 913 (Powell, J., concurring in result), and *Lewis* v. *City of New Orleans* (1974), 415 U.S. 130, 135 (Powell J., concurring in result).

While we do not seek to approve the use of profanity or unwarranted public insults regarding the police department, we must reverse appellant's conviction in this case because his statement falls within the realm of protected speech under the Constitution. Accordingly, we find appellant's sole assignment of error well-taken.

Therefore, the judgment of the Toledo Municipal Court is reversed. The costs in this appeal shall be assessed against appellee pursuant to App. R. 24.

*Judgment reversed.*

HANDWORK, P.J., CONNORS and GLASSER, JJ., concur.