**The STATE of Ohio, Appellee,**

v.

**WOOD, Appellant.**

[Cite as State v. Wood (1996), 112 Ohio App.3d 621.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 95–P–0019.

Decided July 15, 1996.

622

*Victor V. Vigluicci,* Portage County Prosecuting Attorney, and *Mark J. Hanna,* Assistant Prosecuting Attorney, for appellee.

*Ralph C. Megargel,* for appellant.

CHRISTLEY, Judge.

Appellant, Robert E. Wood, appeals from a decision of the Portage County Municipal Court, finding him guilty of disorderly conduct, in violation of R.C. 2917.11.

The charge was based on appellant's actions on November 15, 1994, on the first floor of the Kent State University ("KSU") Library, wherein, in the presence of other people, he approached two KSU police officers. Appellant was an alumnus of KSU, but was not a student or faculty member at the time of this incident.

According to the facts presented by the prosecutor at the plea hearing, appellant "approached the officers, provided officers the gesture of the middle finger, told the officers 'fuck you' and continued loud abusive language for several minutes and the language continued upon several requests to desease [sic]."

Appellant was served with a criminal complaint accusing him of disorderly conduct, in violation of R.C. 2917.11, as well as with an administrative KSU persona non grata status warning notice. The criminal complaint stated that appellant "did recklessly cause inconvenience, annoyance and alarm to another by making unreasonable noise and offensively coarse utterance, gesture or display, and communicate unwarranted and grossly abusive language to any person after warning. SAID ACT BEING Disorderly conduct, A M–4 IN VIOLATION OF SEC. No. 2917.11 O.R.C."

The KSU persona non grata status warning notice stated that a determination meeting was to be held and stated the following:

"You are hereby charged with the following unacceptable behavior: Mr. Wood engaged in Disorderly Conduct at the Circulation Desk (KSU Library). Mr. Wood's behavior was loud and offensive to employees and patrons."

On December 15, 1994, the persona non grata proceeding was held. On December 19, 1994, the hearing officer found that appellant violated KSU's Code of Conduct and was a persona non grata. He was banned from utilizing certain KSU facilities for one year.

On January 23, 1995, appellant filed a motion to dismiss the criminal complaint arguing, inter alia, that the continued prosecution of him by the state was a violation of his constitutional rights against double jeopardy. He claimed that his KSU proceeding barred further prosecution regarding the same incident.

On February 6, 1995, a hearing was held by the court on appellant's motion to dismiss, which was overruled. At that time, appellant's plea hearing was held and he pled "no contest" to the aforementioned facts. The court then listened to the prosecution's recitation of the facts and circumstances leading to the charge

and found appellant guilty. Appellant was fined court costs only and the sentence was stayed pending this appeal.

Appellant filed his notice of appeal on March 7, 1995; however, this court remanded the cause to the trial court on June 22, 1995, because the judgment entry journalizing the court's decision was not properly time-stamped. The entry was properly journalized on June 23. On July 27, this court determined that proper journalization had been established and that the previously filed notice of appeal would be considered a premature notice pursuant to App.R. 4(C). The appeal is now properly before this court and appellant asserts the following as error:

"1. The trial court erred in convicting Appellant in that the evidence presented was insufficient to sustain a conviction of disorderly conduct under R.C. 2917.11.

"2. The trial court erred in denying the Appellant's pre-trial motion to dismiss on the ground that the prosecution constituted double jeopardy under the Fifth Amendment to the United States Constitution."

In his first assignment, appellant asserts that the evidence presented was insufficient to sustain a conviction for disorderly conduct. Specifically, he claims that the facts as read into the record were insufficient to support such a conviction and that the complaint did not contain all of the necessary allegations to sustain such a conviction.

Appellant was charged with violating R.C. 2917.11(A)(2), which states:

"No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following:

"* * * *

"(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display, or communicating unwarranted and grossly abusive language to any person * * *."

In essence, appellant is asking this court to review the evidence against him and find that the evidence was insufficient to support his conviction. Appellant's assignment is without merit.

Pursuant to Crim.R. 11(B)(2), "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the * * * complaint * * *." See, also, *State v. Waddell* (1995), 71 Ohio St.3d 630, 646 N.E.2d 821.

R.C. 2937.07 provides:

"If the plea be 'no contest' or words of similar import in pleading to a misdemeanor, it shall constitute a stipulation that the judge * * * may make finding of guilty or not guilty from the explanation of circumstances, and if guilt be found, impose or continue for sentence accordingly. * * *" See, also, *Cuyahoga Falls v. Bowers* (1984), 9 Ohio St.3d 148, 9 OBR 438, 459 N.E.2d 532.

That code section has not been overruled by Crim.R. 11, as it confers a substantive right to be discharged if the statement of facts fails to establish all of the elements of the offense. *Id.*

By pleading no contest, appellant admitted the truth of the matters alleged in the complaint and, other than presenting some evidence as to each element, the prosecutor was relieved of the burden of presenting evidence sufficient to prove these elements beyond a reasonable doubt. *State v. Stow Veterans Assn.* (1987), 35 Ohio App.3d 45, 519 N.E.2d 660, and R.C. 2937.07. The court had no duty to take additional testimony regarding this matter and could properly make a determination of guilt from the explanation of the circumstances by the prosecutor, after determining that appellant was making the plea voluntarily, knowing the full effect thereof. Crim.R. 11(C)(2); *Cleveland v. Makris* (1993), 90 Ohio App.3d 742, 746, 630 N.E.2d 739, 741, and *Waddell.*

However, in a no contest situation, a conviction is improper if the statements of factual matter presented to the court in support of the complaint fail to address all of the essential elements of the offense:

"The plea of no contest constitutes an admission, not of guilt, but of the truth of the facts alleged in the * * * complaint. Crim.R. 11(B)(2). In order to obtain a conviction of a defendant who has pled no contest, the state must offer an explanation of the circumstances to support the charge. This explanation is *sufficient if it supports all the essential elements of the offense. Chagrin Falls v. Katelanos* (1988), 54 Ohio App.3d 157, 159, 561 N.E.2d 992, 994." (Emphasis added.) *State v. Freeman* (Nov. 22, 1995), Cuyahoga App. No. 68320, unreported, at 7–8, 1995 WL 693110.

Therefore, upon appeal, this court must determine whether the facts as recited by the prosecution were sufficient to support a fourth-degree conviction for disorderly conduct. See, *e.g., Columbus v. Gullett* (July 12, 1990), Franklin App. No. 90AP–2, unreported, 1990 WL 98391; *Bowers; Waddell.* We find that they were.

The Supreme Court of Ohio dealt with the constitutionality of R.C. 2917.11 in *State v. Hoffman* (1979), 57 Ohio St.2d 129, 11 O.O.3d 298, 387 N.E.2d 239, holding that the statute was not unconstitutionally vague or overbroad, even though it lacked a written prohibition of its application to protected speech, because it could be narrowly interpreted to limit its application to unprotected

speech. The *Hoffman* court also determined that profane language is not protected where it is likely, by its very utterance, "to inflict injury or provoke the average person to an immediate retaliatory breach of the peace." *Id.* at paragraph one of the syllabus.

More specifically, it prohibited punishment under R.C. 2917.11(A)(2) unless the words spoken were "fighting words." The *Hoffman* court thus preserved the constitutionality of R.C. 2917.11 by requiring that the prosecution prove the element that the speech was not protected. See *State v. Wylie* (1984), 19 Ohio App.3d 180, 19 OBR 287, 482 N.E.2d 1301, and *State v. Miller* (1996), 110 Ohio App.3d 159, 673 N.E.2d 934.

■ The state argues that *Hoffman* merely interpreted R.C. 2917.11 and did not add another element to be met before a proper conviction could be had. However, a review of cases in which a defendant was charged under R.C. 2917.11 reveals that each case discussed the element of "fighting words" and determined whether that element was met prior to entering a judgment. This court has adopted that position.

"Where the language is not threatening, does not constitute 'fighting words' and is not likely by its very utterance to inflict injury or provoke the average person to immediate retaliatory breach of peace, disorderly conduct has not been proven." *Lake Co. Metro Park Dist. v. LaMacchia* (Sept. 30, 1992), Lake App. No. 91–L–110, unreported, at 9, 1992 WL 267355. See, also, *Warren v. Patrone* (1991), 75 Ohio App.3d 595, 600 N.E.2d 344.

Therefore, it seems clear to this court that this has become a *de facto* element of R.C. 2917.11 which must be considered. *State v. Ross* (1967), 12 Ohio St.2d 37, 41 O.O.2d 220, 231 N.E.2d 299.

Accordingly, the state needed to produce facts sufficient to allow the court to determine whether appellant's words and gestures were "fighting words." Were the facts submitted to the court as to this element sufficient to have allowed it to properly enter a finding of guilty?

■ We note that in most of the cases in which a police officer is the offended party, there is a distinction between the mere use of profane language in the presence of the police officer and when the language is directed to the officer personally. *LaMacchia* at 9, and *State v. Dickey* (1991), 75 Ohio App.3d 628, 600 N.E.2d 365. It has also been held that because some degree of verbal abuse goes with the territory in police work, the standard of what constitutes fighting words is raised in those cases where police officers are the offended party. See *Toledo v. Grince* (1989), 48 Ohio App.3d 126, 548 N.E.2d 999. However, even the *Grince* case approvingly cited cases which distinguished between language which was

nonpersonal and not directed to the particular officer and language which was intentionally directed to the particular officer.

"In *Kent v. Kelley,* [ (1975), 44 Ohio St.2d 43, 73 O.O.2d 230, 337 N.E.2d 788] the defendants used coarse epithets to tell the police to leave the area. The court held that such words did not constitute fighting words because they were not descriptive of any person or directed at that person in particular and were not such words that they would have provoked the average person. The court distinguished the case from an earlier case, *Cincinnati v. Karlan* [ (1974), 39 Ohio St.2d 107, 68 O.O.2d 62, 314 N.E.2d 162,] where the defendants called the police names and used words to reflect hatred toward the officers. In that case, the court had held that such words constituted 'fighting words' prohibited by statute because they were spoken in public, were intentionally directed toward the police officers present, and were likely to incite the average person." *Grince,* 48 Ohio App.3d at 128, 548 N.E.2d at 1001–1002.

Moreover, although appellee argues that other persons were present during this encounter, this court has held that the mere presence of other people has no bearing on whether speech is protected unless the others were being incited to also engage in disorderly conduct or violence or were being encouraged to disobey police orders. *State v. Robison* (1992), 83 Ohio App.3d 337, 614 N.E.2d 1109. No such evidence exists in this case.

Having reviewed the concept of "fighting words," we turn to whether the court had a sufficient basis to find appellant guilty of violating R.C. 2917.11(A)(2). The only evidence of record before it was the following recitation of facts to the court by the prosecutor:

"[The defendant] approached the officers, provided officers the gesture of the middle finger, told the officers 'fuck you' and continued loud abusive language for several minutes and the language continued upon several requests to desease [*sic* ]."

■ At least part of appellant's language and gestures was directly addressed to the officers personally. Specifically, appellant went directly up to the officers and repeatedly employed this type of language, together with actions and gestures of a provocative nature. To tell anyone, including a police officer, "fuck you," either verbally or via an extended digit, may indeed constitute fighting words, depending on the circumstances. Therefore, appellant's actions were not protected by the Constitution as they were directed specifically and intentionally at the officers. We do not see this as being in conflict with our *LaMacchia* decision in which the appellant told the rangers, " 'Get your fucking hand off my shoulder.' " *Id.* at 12. Admittedly, this is very close to the line, but we perceive a distinction. The *LaMacchia* appellant also told the ranger: "Leave me alone;

get the fuck out of here." *Id.* Such language, although crude, merely reflects a general commentary about the situation and not a direct attack on the officers; while in the instant case, it was such a direct attack.

Again, the state was not required to provide proof beyond a reasonable doubt as to each element. Rather, there had to be some evidence as to each element. We, therefore, determine the recitation by the prosecutor was sufficient to demonstrate that fighting words were used, and thus, we determine the first assignment of error to be without merit.

In his second assignment of error, appellant asserts that the court improperly denied his motion to dismiss on the grounds of double jeopardy. He filed the motion on the basis that his criminal prosecution constituted double jeopardy as he had already been subjected to sanctions imposed by KSU, pursuant to KSU Rules 3342–5–301, for the same action.

█ The Double Jeopardy Clause protects a person from a second prosecution for the *same offense* after acquittal, a second prosecution for the *same offense* after conviction, and multiple punishments for the *same offense*. *United States v. Halper* (1989), 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496. Clearly, before a court can consider whether one's rights against double jeopardy have been violated, it must find that the two prosecutions resulted from the *same offense,* not merely the same incident. Such is not the case in the instant matter.

Appellant's persona non grata proceeding was based on the charge that appellant engaged in disorderly conduct. The term "disorderly conduct" in the administrative citation does not constitute a legal term of art as it does under R.C. 2917.11. Further, there is nothing to indicate that the term, as used in the KSU citation, was intended to be synonymous with the phrase as used in R.C. 2917.11. Specifically, the KSU citation itself defined disorderly conduct as being behavior that was "loud and offensive to employees and patrons."

However, different elements had to be proven in the criminal action, even though the criminal conviction was also based on a charge of disorderly conduct. In order for appellant to be found guilty of disorderly conduct, as defined in R.C. 2917.11, the state had to prove that appellant recklessly caused "inconvenience, annoyance, or alarm to another by * * * [m]aking unreasonable noise or offensively coarse utterance, gesture or display, or communicate[d] unwarranted and grossly abusive language to any person * * * after reasonable warning." In addition, as previously discussed, the state also had to prove that the words used by appellant constituted fighting words under the circumstances.

█ Accordingly, a conviction under R.C. 2917.11 requires proof of several additional elements not necessary for the imposition of persona non grata status. Because the elements for the two offenses are different, they cannot be consid-

ered the same offense and, therefore, appellant had not been deprived of his rights against double jeopardy. Again, the fact that both offenses arose from the same incident is not dispositive.

As was stated in *State v. Best* (1975), 42 Ohio St.2d 530, 71 O.O.2d 517, 330 N.E.2d 421, paragraph three of the syllabus states:

"The applicable rule under the Fifth Amendment is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. A single act may be an offense against two statutes, and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

■ We also note that the penalty exacted as a result of the conviction of the persona non grata offense did not constitute a denial of a right held by the general public. The use of the KSU library by a nonstudent is a privilege, not a right. Further, it is a privilege of a fairly insignificant status as compared to a license to drive. In the administrative license suspension case relied on by appellant, the defendant lost his ability to drive, a privilege which has ascended to almost constitutional heights. In the instant matter, as an administrative remedy, appellant lost only his ability to enter certain buildings on the KSU campus. The ability to drive a car is a necessity which is integral to one's being able to function in today's society. We find no such hardship imposed on appellant in the denial of his ability to enter certain academic buildings at a university. See *State v. Hlavin* (Jan. 19, 1996), Geauga App. No. 95–G–1912, unreported, 1996 WL 200584. In the instant matter, no such right or heightened privilege, such as loss of driving privileges, is at issue. See, also, *State v. Orwa* (June 1, 1978), Summit App. No. 8676, unreported.

■ The Attorney General of Ohio has recently addressed a similar issue with regard to the use of county law libraries by the general public. That opinion found that a county law library, regardless of whether it received public funds, has no statutory duty to afford members of the general public free access to its facility. 1996 Ohio Atty.Gen.Ops. No. 96–013. Under R.C. 3345.21, we find similar authority for a state-funded institution to take administrative action to regulate access by the public in a reasonable manner.

Therefore, for the additional reason that appellant was not denied a privilege of the same degree as the appellant in *Hlavin,* appellant's reliance on that case is misplaced.

Appellant's second assignment of error, is also without merit.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and JOSEPH E. MAHONEY, J., concur.