[Cite as *State v. Hale*, **2018-Ohio-1431.**]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                    Court of Appeals No. OT-17-023

      Appellee                              Trial Court No. CRB 1601490 A

v.

Jayson Hale                                    **DECISION AND JUDGMENT**

      Appellant                             Decided:  April 13, 2018

* * * * *

James VanEerten, Ottawa County Prosecuting Attorney, and
Dina Shenker, Assistant Prosecuting Attorney, for appellee.

David A. Nacht, for appellant.

* * * * *

**JENSEN, J.**

**{¶ 1}** This matter is before the court on appeal from the July 31, 2017 judgment of

the Ottawa County Municipal Court finding appellant, Jayson Hale, guilty of disorderly

conduct in violation of R.C. 2917.11(A)(2), a minor misdemeanor.  For the reasons that

follow, we affirm the judgment of the Ottawa County Municipal Court.

**{¶ 2}** This matter stems from an allegation that while inside a gas station located in Oak Harbor, Ottawa County, Ohio, on or about October 29, 2016, Hale "used foul language and gross sexual language in a public place causing annoyance to Lindsey Huston, an employee of Friendship Sunoco."

**{¶ 3}** At a trial to the bench, the state presented testimony from three witnesses and a copy of the surveillance tape from a camera inside the Oak Harbor Friendship Sunoco Gas Station.

**{¶ 4}** Eric Parker testified that he is employed as a night shift patrolman with the Oak Harbor Police Department. Just after 11:30 p.m. on October 28, 2016, Officer Parker drove his marked patrol car to the Friendship Sunoco Gas Station and went inside. He was dressed in his regular uniform. Sergeant Couts from the Carroll Township Police Department arrived at about the same time. He was also dressed in uniform.

**{¶ 5}** Officer Parker testified that consistent with their usual routine, he and Sergeant Couts stood near the coffee area inside the gas station to provide late-night security as the gas station clerks waited on customers and performed their closing duties.

**{¶ 6}** At about 11:45 p.m., Jayson Hale and his wife, Christy Lynn Hale, entered the station. At the time, Hale was employed by the Ottawa County Sheriff's office. Hale was off-duty and dressed in street clothes. Both Officer Parker and Sergeant Couts knew Hale in his law enforcement capacity, but neither considered him a friend.

**{¶ 7}** Seconds after Hale walked into the gas station, Hale loudly asserted, "Fuck you, Parker." Officer Parker explained what happened next:

2.

Then [Hale] walked to the far back corner, I guess it would be the furthest away from me he could get. I heard it again, "Fuck you, Parker." And then I just, I looked at * * * Sergeant Couts, and we kind of just looked at each other.

Then I heard, as he came back towards * * * the front of the store where the cashiers are, I heard him say, "Suck my dick, Parker." Now he's fairly close * * * he looked like through the racks area over the aisle and said it again, "Suck my dick, Parker."

I didn't respond to any of them. I was just kind of shocked that was happening in a public store, but then he came around the corner to me and I told him I didn't want to talk to him. And I could see that he had been drinking. I could smell it. So I didn't want to talk to him, so I asked him to get away from me.

{¶ 8} After stepping to within three feet of Officer Parker, Hale turned toward the counter to make a purchase. His wife followed. Officer Parker testified that while standing at the counter, Hale's wife pointed her finger at him and yelled "there is two sides to every story." As Hale and his wife walked out of the station, Hale yelled "coward" or "you're a coward."

{¶ 9} Sergeant Joshua Couts' recollection of what occurred in the gas station just before midnight on October 28, 2016, was nearly identical to that of Officer Parker. When asked how "bad" the situation inside the station was, Couts' explained:

3.

Well, when [Hale] come over to the second aisle and with the "suck my dick, Parker," * * * I felt like "Okay, he's looking for us to say something or Officer Parker to say something."

And the last time he said it and then when he came over, just, I don't know, it was, felt like it was provoking, trying to start something that really didn't need to be started.

{¶ 10} Sergeant Couts testified that he did not get between Officer Parker and Hale nor did he think about getting in between the two men. He did however, turn sideways so that he could see what was going on and "be more prepared if [he] had to be."

{¶ 11} During the time that Hale was walking around the gas station yelling obscenities towards Officer Parker, there were other customers inside, including a woman with small children.

{¶ 12} Lindsey Huston is a sales associate at the Friendship Sunoco gas station. She was working when Hale and his wife entered the station. Ms. Huston explained that while she was standing behind the counter, "a couple walked in, and the man went straight for [Officer] Parker and was being very loud and yelling, and the wife did the same. So, it was kind of nerve racking and took me very by surprise." Huston indicated that Hale's voice was "very loud" and "enough to fill a room." When asked what she was feeling when Hale walked into the station, Ms. Huston explained,

4.

I was blown away. * * * I've never seen anything like that happen. And I've been working retail for a while. So seeing someone go straight for an officer and not caring who was around and just wanted I mean it was almost, it was crazy. I was nervous, especially working at night. Like that stuff doesn't happen and then it did. It scared me.

{¶ 13} Ms. Huston explained that after Hale and his wife came up to the register, she "just wanted to get them out" of the gas station as fast as she could. She did not say anything to Hale or his wife because she was "scared." She also indicated that after witnessing the event, she realized that she never wanted to work a shift by herself.

{¶ 14} Following a bench trial, Hale was found guilty of disorderly conduct and ordered to pay court costs and serve ten hours in the court's supervised community service program. Hale now appeals, assigning one two-part error for our review:

> The elements of the crime of disorderly conduct were not proven beyond a reasonable doubt because Defendant-Appellant's speech did not rise to the level of "fighting words" and was protected by the First Amendment to the United States Constitution.

> Defendant-Appellant's conviction for disorderly conduct is in violation of the First Amendment to the United States Constitution which protects Mr. Hale's right to speech and free expression.

Hale simultaneously addresses both parts of his sole assignment of error in his brief. Thus, we address both parts of his sole assignment of error correspondingly.

5.

{¶ 15} As noted above, the complaint charging Hale with disorderly conduct was based on allegations he used "foul" and "gross sexual language" to cause annoyance to an employee of the gas station. R.C. 2917.11(A)(2) provides that no person shall recklessly cause "inconvenience, annoyance, or alarm to another" by "[m]aking unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abuse language to any person."

{¶ 16} There is no dispute that Hale's comments toward Officer Parker were offensive, unwarranted, and grossly abusive. There is also no dispute that Hale's comments recklessly caused annoyance to Ms. Huston. Therefore, the only question before us is whether Hale's statements are protected speech under the First Amendment to the United States Constitution.

{¶ 17} Previously, in *Toledo v. Grince*, 48 Ohio App.3d 126, 548 N.E.2d 999 (6th Dist.1989), we held:

> While the first Amendment to the United States Constitution creates the right of free speech (which is made applicable to the states and their subdivisions through the Fourteenth Amendment), the exercise of that right is narrowly limited under certain circumstances. One situation where pure speech can be regulated by criminal statute is where a certain class of speech, now commonly known as "fighting words" is involved. The rationale behind this limitation on the right to free speech is that where words incite an immediate breach of peace, their value as an expression of

ideas or truth is outweighed by society's interests in maintaining order and morality * * *.  *Id*. at 128.

{¶ 18} The Supreme Court of Ohio has held that a person may *not* be found guilty of disorderly conduct under subsection (A)(2) unless the words spoken are "likely by their very utterance, to inflict injury or provoke the average person to an immediate retaliatory breach of the peace."  *State v. Hoffman*, 57 Ohio St.2d 129, 133, 387 N.E.2d 239 (1979), paragraph one of the syllabus.  In other words, if an offender's spoken words do not rise to the level of "fighting words," than the offender's speech is protected by the First and Fourteenth Amendments to the U.S. Constitution and cannot be punished as a criminal act.  *See Cincinnati v. Karlan*, 39 Ohio St.2d 107, 314 N.E.2d 162 (1974); *see also In re F.F.*, 6th Dist. Wood No. WD-16-031, 2016-Ohio-7695, ¶ 12 ("To support a conviction of disorderly conduct, the words spoken must be 'fighting words."); *Hoffman*, 57 Ohio St.2d 131 ("[N]o matter how rude, abusive, offensive, derisive, vulgar, insulting, crude, profane or opprobrious spoken words may seem to be their utterance many not be made a crime unless they are 'fighting words' as defined by that tribunal.").

{¶ 19} "The test for determining what words constitute 'fighting words' is whether the words used would reasonably incite the average person to retaliate."  *Grince* at 128.  Further, to constitute "fighting words," the words chosen must be "used to describe a person or be directed at a person."  *Id*. at 126, citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 86 L.Ed. 1031 (1942).  In *State v. Wood*, 112 Ohio App.3d 621, 679 N.E.2d 735 (11th Dist.1996), the court held, "[t]o tell anyone, including a police

7.

officer, "fuck you," either verbally or via an extended digit, may indeed constitute 'fighting words' depending on the circumstances." *Id.* at 628.

{¶ 20} Here, Hale repeated obscene remarks, all of which were directly addressed to Officer Parker. After making the remarks, Hale approached Officer Parker in a manner that Sergeant Couts described as Hale "provoking" Officer Parker and "trying to start something that really didn't need to be started." Given the circumstances of this case, we find that the trial court did not err in finding Hale guilty of disorderly conduct. Hale's obscene remarks, directed toward Officer Parker, in the manner described would reasonably incite the average person to retaliate. Thus, Hale's words constitute "fighting words" and are not protected by the First and Fourteenth Amendment to the U.S. Constitution. Accordingly, Hale's sole assignment of error is not well-taken.

## Conclusion

{¶ 21} For the reasons set forth above, the judgment of the Ottawa County Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

James D. Jensen, J.
CONCUR.

_____
JUDGE