[Cite as *State v. Larrick*, 2023-Ohio-4663.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 23 CA 000007 |
| TRAVIS A. LARRICK | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common Pleas, Case No. 23-CR-134

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      December 21, 2023

APPEARANCES:

For Plaintiff-Appellee             For Defendant-Appellant

DAVE YOST                             MICHAEL GROH
OHIO ATTORNEY GENERAL        1938 East Wheeling Avenue
MICAH R. AULT                   Cambridge, Ohio  43725
ASSISTANT ATTORNEY GENERAL
615 West Superior Avenue, 11th Floor
Cleveland, Ohio  44113

*Wise, J.*

**{¶1}**   Defendant-Appellant Travis A. Larrick appeals his convictions on one count each of Assault on a Peace Officer, Obstructing Official Business, Resisting Arrest, Aggravated Disorderly Conduct, and Disrupting Public Services, entered in the Guernsey County Court of Common Pleas following a jury trial.

**{¶2}**   Plaintiff-appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶3}**   For purposes of the appeal, the relevant facts and procedural history are as follows:

**{¶4}**   On September 27, 2022, the Guernsey County Grand Jury returned a five-count indictment, charging Appellant Travis A. Larrick with:

Count One: Assault on a Peace Officer, in violation of R.C. §2903.13(A), §2903.13(C)(5), a felony of the fourth degree;

Count Two: Obstructing Official Business, in violation of R.C. §2921.31(A), §2921.31(B), a felony of the fifth degree;

Count Three: Resisting Arrest, in violation of R.C. §2921.33(B), §2921.33(O), a misdemeanor of the first degree;

Count Four:  Assault on a Peace Officer, in violation of R.C. §2903.13(B), §2903.13(C)(6), a felony of the fourth degree;

Count Five: Aggravated Disorderly Conduct, in violation of R.C. §2917.11(A)(2), a misdemeanor of the fourth degree.

**{¶5}**   (T. at 16-17, 20).

**{¶6}** On October 28, 2022, a superseding indictment was filed, identical to the first indictment, except it contained a sixth count, charging Appellant with Disrupting Public Services, in violation of R.C. §2909.04(A)(1), §2909.04(C), a felony of the fourth degree. (T. at 20).

**{¶7}** On January 10, 2023, a three-day jury trial commenced. At trial, the jury heard the following testimony:

**{¶8}** Appellant's aunt, Jeannine Larrick, testified that on May 29, 2022, Appellant spent the day drinking and driving cars into ditches on their property. (T. at 316-317, 381). Appellant then got into a verbal altercation with his aunt and his grandmother, who called the police. (T. at 317, 373-374). While his grandmother was speaking with the police, Appellant ripped the phone cord from the wall which disconnected the call, and then left the residence in a vehicle. (T. at 317-319, 374, 382).

**{¶9}** Ohio State Highway Patrolman Joshua Zaugg located a white Ford Taurus sitting in the middle of the road a short distance from the residence with no one inside the vehicle. (T. at 208). The vehicle was not registered and had no license plates, so Trooper Zaugg called for a tow truck and began to inventory the vehicle. (T. at 209-210).

**{¶10}** Guernsey County Deputy Devin Ryan was headed to the residence where the altercation occurred when he saw Trooper Zaugg sitting in his cruiser near the white vehicle. (T. at 384). Deputy Ryan briefly stopped, and then headed to the residence to speak with Appellant's family. (T. at 384-386). After speaking with the grandmother and the aunt, Deputy Ryan returned to the scene of the vehicle to assist Trooper Zaugg. (T. at 384-386).

{¶11} Upon arrival, Deputy Ryan saw Trooper Zaugg standing near the vehicle having a conversation with Appellant. (T. at 386). Appellant was argumentative and belligerent with law enforcement as numerous neighbors watched the altercation. (T. at 180, 186, 196, 387, 391-392). Appellant had slurred speech, an odor of alcohol, and appeared to be under the influence of something. (T. at 213, 403, 536). He repeatedly told officers to "go fuck" themselves and was trying to pick a fight with the officers. (T. at 193, 259, 304, 388). Officers told him to leave or he would be arrested for disorderly conduct. (T. at 458-459). Appellant left the scene but continued to scream obscenities at the officers as he left, calling them "faggots" and making other sexually explicit comments directed at law enforcement. (T. at 389). He also told officers to take off their badges which they believed was an invitation to fight. (T. at 402). However, Appellant eventually left at about the same time as the tow truck driver arrived on scene to remove the vehicle from the roadway. (T. at 390).

{¶12} While the officers were communicating with the tow truck operator, Appellant returned to the scene. (T. at 390). Appellant attempted to enter the vehicle and was told that he could not because it was being towed. (T. at 214, 390). Appellant stated he was taking the vehicle, although he had previously been told he was not allowed to take it. (T. at 459). Appellant continued to swear at law enforcement, refused to comply with their commands, and behaved aggressively toward them. (T. at 215, 459).

{¶13} Throughout the encounter, Appellant made aggressive actions towards the officers, taking everything out of his pockets and throwing it toward their feet and taking a posturing with one foot forward in what Trooper Zaugg described as a bladed stance. (T. at 304). After being denied entry into the vehicle, Appellant told officers that he was

going back to the residence where the domestic dispute had just occurred, and started walking in that direction after officers had previously told him he was not permitted to return there that evening. (T. at 391-392).

**{¶14}** Deputy Ryan was following Appellant when Appellant suddenly spun and turned on him. (391-392, 405). Deputy Ryan took Appellant to the ground, but Appellant managed to escape and started running away from the officers. (T. at 391-392). Trooper Zaugg dove at him, missed, and lost his body camera in the process. (T. at 216). Deputy Ryan chased Appellant through several yards as neighbors watched the commotion. (T. at 391-392). As Deputy Ryan neared Appellant, Appellant took a fighter's stance and began swinging at him. (T. at 393). The tow truck driver saw Appellant punching, kicking, and throwing haymakers during the incident. (T. at 332-333). Deputy Ryan again took him to the ground and was able to place him in handcuffs with the assistance of Trooper Zaugg. (T. at 217, 393).

**{¶15}** Officers then carried Appellant to the vehicle and attempted to place him in the backseat. (T. at 393-394). However, Appellant kept holding onto the exterior of the car and would not cooperate. (T. at 394). At that point, Trooper Zaugg went around to the other side of the vehicle with the intention of pulling Appellant onto the seat. However, a canine cage on that side of the back seat prevented him from doing so. (T. at 217, 394).

**{¶16}** Meanwhile, Deputy Ryan pulled on Appellant, his hands came loose from the vehicle, and the weight of both men landed on top of Deputy Ryan's knee, which twisted in the wrong direction. (T. at 394). Deputy Ryan immediately felt severe pain in his left knee. (T. at 394-395). Deputy Ryan was able to remove the cartridge from his

Taser and "drive stun" Appellant with it, after which the officers eventually got Appellant into the back seat of the vehicle. (T. at 395).

{¶17} Appellant continued to yell and swear from inside the cruiser. (T. at 219). Ohio State Highway Patrol Lieutenant Melanie Appleman transported Appellant to the jail after the incident. (T. at 481-482). Appellant remained agitated and confrontational throughout the trip and was even combative with the officers working at the station. (T. at 482, 489-490).

{¶18} Several neighbors had Appellant show up at their house earlier that evening asking for gas for his car. (T. at 177, 191). They also heard him repeatedly screaming the "f word" at the officers during the incident. (T. at 180, 193, 198, 354-355). Barbara Moore, an elderly neighbor, found Appellant's yelling to be offensive and upsetting. (T. at 181, 184). Several of her family members sat outside of her house during the incident to make sure she was safe. (T. at 355-357).

{¶19} Deputy Ryan was transported by ambulance to the hospital for his knee because he was unable to walk on it. (T. at 407-408). An MRI revealed a severe MCL sprain. (T. at 408). He testified that it took him six (6) months to get full range of motion in his knee, and he was in constant pain for months. (T. at 409). Even at the time of trial, he stated that he still had pain when doing certain activities and believed that this would never go away. (T. at 409-410).

{¶20} At the conclusion of the trial, the jury found Appellant guilty on all charges except one count of Assault on a Peace Officer.

{¶21} On February 16, 2023, the trial court sentenced Appellant to a fifteen (15) month mandatory sentence for the charge of Assault on a Peace Officer, which the trial

court ran consecutive to a twelve (12) month sentence for Disrupting Public Services, for an aggregate sentence of twenty-seven (27) months in prison. (Sentencing T. at 52). The trial court did not sentence Appellant on the counts of Obstructing Official Business, Resisting Arrest, or Disorderly Conduct, finding that those counts merged with the Assault conviction. (Sentencing T. at 10, 51).

**{¶22}** Appellant now appeals, raising the following assignments of error on appeal:

## ASSIGNMENTS OF ERROR

**{¶23}** "I. THERE WAS INSSUFFICIENT [SIC] EVIDENCE TO FIND DEFENDANT GUILTY.

**{¶24}** "II. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

### I., II.

**{¶25}** In his two assignments of error, Appellant argues that his convictions were against the manifest weight and sufficiency of the evidence. As Appellant does not set forth separate arguments for each, we shall address the assignments together.

**{¶26}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶27}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶28}** Appellant herein focuses his argument on his conviction for disorderly conduct, arguing that while he admittedly used offensive language toward the officers, he did not make any threats. Appellant argues that the statements he made toward the officers are protected speech under the First Amendment.

**{¶29}** Appellant further argues that because he did not engage in Disorderly Conduct, it was proper for him to resist arrest for an unlawful arrest pertaining to such conduct, and Counts 2, 3, and 4, must therefore also be dismissed as those events occurred as a result of the arrest for the Disorderly Conduct. Additionally, Appellant argues that Count 6 must also be dismissed, arguing that he did not commit the offense of Disrupting Public Services because he did not actually impair law enforcement in responding to an emergency.

*Disorderly Conduct*

**{¶30}** Appellant was convicted of Aggravated Disorderly Conduct, in violation of R.C. §2917.11(A)(2)(E)(3)(A), which provides:

> (A)    No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
>
> ***

(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person.

***

(E) * * *

(3) Disorderly conduct is a misdemeanor of the fourth degree if any of the following applies:

(a) The offender persists in disorderly conduct after reasonable warning or request to desist.

{¶31} In *State v. Hoffman,* 57 Ohio St.2d 129, 133, 387 N.E.2d 239 (1979), the Ohio Supreme Court held,

… a person may not be punished under R.C. 2917.11(A)(2) for "recklessly caus(ing) inconvenience, annoyance, or alarm to another," by making an "offensively coarse utterance," or "communicating unwarranted and grossly abusive language to any person," unless the words spoken are likely, by their very utterance, to inflict injury or provoke the average person to an immediate retaliatory breach of the peace.

{¶32} In reviewing a claim for disorderly conduct wherein a police officer is the complainant, a higher standard is to be used. The words used toward an officer must be "fighting words" or of such a character that would provoke a violent response. *State v. Wylie* (1984), 19 Ohio App.3d 108; *State v. Johnson,* (1982), 6 Ohio App.3d 56, 453 N.E.2d 1101. The words themselves are what is to be evaluated, not the individual

officer's subjective interpretation of the words. *State v. McMullen*, 5th Dist. Licking No. 04-CA-107, 2005-Ohio-3542.

**{¶33}** In *State v. Beamer,* Coshocton No. 11CA14, 2012–Ohio–2222, this Court held,

> Punishment for disorderly conduct based on spoken words is prohibited unless those words amount to 'fighting words.' See *State v. Hoffman* (1979), 57 Ohio St.2d 129, 133, 387 N.E.2d 239; *State v. Wood* (1996), 112 Ohio App.3d 621, 627, 679 N.E.2d 735. 'Fighting words' are those words that are likely by their very utterance to inflict injury or to incite an immediate breach of the peace. *State v. Thompson,* 95 Ohio St.3d 264, 265, 767 N.E.2d 251, 2002–Ohio–2124, citing *Chaplinsky v. New Hampshire* (1942) 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031. In determining whether language rises to the level of 'fighting words,' courts look at the circumstances surrounding the words. *Hamilton v. Johnson* (Dec. 3, 1999), Butler App. No. CA99–02–025, 1999 WL 1087024, *4, citing *State v. Presley* (1992), 81 Ohio App.3d 721, 724, 612 N.E .2d 353.

> This Court has stated that 'profane words specifically and intentionally directed to a * * * [police] officer usually constitute fighting words, while an inappropriate and vulgar commentary about the situation, without more, is not punishable.' *Johnson* at 4, citing *Wood* at 627–629, 679 N.E.2d 735. Words directed to a police officer that courts have found to be 'fighting words' include, 'What are you going to do, asshole, pig? You going to arrest me?' *State v. Dickey* (1991), 75 Ohio App.3d 628, 630, 600 N.E.2d

365; 'I hate all of you fucking prick-ass cops * * * get out of my way you fucking prick-ass cops,' *Cincinnati v. Karlan* (1974), 39 Ohio St.2d 107, 314 N.E.2d 162, paragraph three of the syllabus; and 'You're a fucking jackass [.]' *Johnson* at 4. Words directed to a police officer that, while vulgar, courts have not found to be 'fighting words' include, 'stay away from the fucking door, get the fuck out of here,' *Kent v. Kelley* (1975), 44 Ohio St.2d 43, 43, 337 N.E.2d 788; 'the police are worthless, this is f[ucking] bullshit,' *Toledo v. Grince* (1989), 48 Ohio App.3d 126, 127, 548 N.E.2d 999; and 'go ahead, tow the motherfucker[.]' *State v. Lamm* (1992), 80 Ohio App.3d 510, 514, 609 N.E.2d 1286." *Middletown v. Carpenter,* Butler App. No. CA2006-01-004, 2006–Ohio–3625, ¶ 14-15.

> \*\*\*
>
> Ohio consistently cautions that law enforcement officers must have a thicker skin than the public as a whole. However, in the facts set forth *sub judice*, appellant's offensive language was made to three EMS personnel and the gathering bystanders. We conclude appellant's words were offensive not only to the EMS personnel, but created an annoyance that caused a crowd to gather. We conclude there was sufficient evidence for the trial court to find appellant guilty of disorderly conduct.

**{¶34}** This Court, as well as other appellate courts, has found that a defendant's conduct should also be considered in addition to the words used to determine whether the conviction for disorderly conduct is legally sufficient. *State v. McMullen,* 5th Dist.

Licking No. 04CA107, 2005-Ohio-3542 at ¶ 21; *State v. Winters,* 2nd Dist. Montgomery No. 29157, 2022-Ohio-2061 at ¶ 29.

**{¶35}** In *McMullen,* the trial court found the defendant guilty of disorderly conduct where he failed to comply with officer's orders, then stood up in an intimidating manner and threatened to spin his tires so that gravel would hit the officers. *McMullen,* supra at ¶ 19. This Court found the defendant's words, coupled with his actions and out of control attitude, were fighting words or a threat to do physical violence. *Id.* at ¶ 21.

**{¶36}** Here, the evidence was sufficient to support all of the necessary elements of R.C. §2917.11(A)(2). As set forth above, Appellant repeatedly told officers to "go fuck" themselves, called them "faggots" and made other sexually explicit comments to them. (T. at 193, 259, 304, 388, 389). Appellant taunted the officers to take off their badges, which they believed was an invitation to fight. (T. at 402). The language used by Appellant was accompanied by Appellant's belligerent attitude and refusal to comply with the orders of law enforcement. Appellant returned to the scene after being warned by officers that if he returned he would be arrested. (T. at 390). Appellant attempted to gain entry into the vehicle after it was already in the process of being towed. (T. at 209-210, 390). After being stopped from getting into the vehicle, Appellant told officers that he was going to go back to the residence where the domestic dispute had just occurred and started walking in that direction, despite the order officers had previously told him telling him that he was not to return there that evening. (T. at 391-392).

**{¶37}** Appellant swore at law enforcement, refused to comply with their orders, and engaged in aggressive behavior toward them. (T. at 215, 459). Appellant made

aggressive actions toward the officers, throwing change toward their feet and taking a fighting stance. (T. at 304).

**{¶38}** When viewed in the light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Appellant's conduct, together with his words, meet the requirements of the disorderly conduct statute.

*Resisting Arrest*

**{¶39}** Appellant was also convicted of Resisting Arrest, in violation of R.C. §2921.33(B), which states:

> (B) No person, recklessly or by force, shall resist or interfere with a
> lawful arrest of the person or another person and, during the course of or
> as a result of the resistance or interference, cause physical harm to a law
> enforcement officer.

**{¶40}** Appellant, in his brief, admits that "Appellant then took actions to resist arrest", "Appellant did have a physical altercation with and did "swing" at Deputy Ryan" and "Appellant did ask Deputy Ryan to take his badge off, presumably to fight him". (Appellant's brief at 2).

**{¶41}** Instead, Appellant argues that his arrest for disorderly conduct was unlawful, and that it is lawful to resist an unlawful arrest. However, based on the above, we find Appellant's argument herein fails based on our finding that Appellant's arrest for Disorderly Conduct was lawful.

*Assault on a Peace Officer*

**{¶42}** Appellant was convicted of Assault on a Peace Officer, in violation of R.C. §2903.13(B), which provides:

(A) ***

(B) No person shall recklessly cause serious physical harm to another or to another's unborn.

***

(C) ***

(6) If the offense is a felony of the fourth degree under division (C)(5)(a) of this section, if the victim of the offense is a peace officer or an investigator of the bureau of criminal identification and investigation, and if the victim suffered serious physical harm as a result of the commission of the offense, the court, pursuant to division (F) of section 2929.13 of the Revised Code, shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the fourth degree that is at least twelve months in duration.

**{¶43}** Here, Appellant's arrest was not unlawful but even assuming arguendo that it was unlawful, Appellant would still not be justified in assaulting Deputy Ryan. A lawful arrest is not an element of assault on a peace officer; therefore, where a citizen forcibly resists even an unlawful arrest they may still be prosecuted for assault on a peace officer. *State v. Corbin,* 12th Dist. Fayette No. CA2010-01-001, 2010-Ohio-3819, ¶ 13, n. 1 citing *State v. Peer,* 2d Dist. Montgomery No. 19104, 2002-Ohio-4198, ¶ 10; See also *State v. Cammon,* 8th Dist. No. 91574, 2009-0hio-4706 at if 28; *State v. Newsome,* 11th

Dist. Ashtabula No. 2003-A-0076, 2005-0hio-3775 at ¶12; *State v. Green,* 5th Dist. Delaware No. 97CAA11052, 1998 Ohio App. LEXIS 3534 at ¶ 8; *City of Toledo v. Terrill,* 6th Dist. Lucas No. L-85-369, 1986 Ohio App. LEXIS 7801 at ¶ 6; *State v. Napier*, 12th Dist. Clermont No. CA2016-04-022, 2017-Ohio-246, ¶ 31.

**{¶44}** Further, as it pertains to law enforcement officers, under well-settled Ohio law, " '[i]n the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, *whether or not the arrest is illegal under the circumstances.*' " (Emphasis added.) *State v. Mann*, 19 Ohio St.3d 34, 39, 482 N.E.2d 592 (1985), *quoting Columbus v. Fraley*, 41 Ohio St.2d 173, 324 N.E.2d 735 (1975), paragraph three of the syllabus; See also *State v. Asp*, 5th Dist. No. 22 CA 11, 2023-Ohio-290, 207 N.E.3d 893, ¶ 61.

*Disrupting Public Services*

**{¶45}** Appellant herein was also convicted of Disrupting Public Services, in violation of R.C. §2909.04, which states:

**{¶46}** "[N]o person, purposely by any means* * * shall * * * interrupt or impair * * * telephone * * * service * * * being used for public service or emergency communication.

**{¶47}** This charge was based on Appellant's actions earlier at the house, where he tore the phone cord from the wall while his grandmother was talking to law enforcement, thereby disconnecting the telephone call and preventing her from continuing with her call to the police

**{¶48}** Appellant's argument that his conviction for Disrupting Public Services was insufficient because law enforcement was not actually impaired from responding to the

emergency is misplaced, as there is no legal requirement that his actions result in preventing law enforcement from responding to the emergency.

**{¶49}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997).

**{¶50}** Here, the jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

**{¶51}** The jury heard testimony from Trooper Zaugg, Deputy Ryan, Lieutenant Appelman, Appellant's aunt and grandmother, one of Appellant's neighbors and the tow-truck driver, all of whom were subjected to cross-examination. The jury also viewed the video footage from Trooper Zaugg's body camera, Deputy Ryan's body camera, Lt. Appleman's body camera and Lt. Appleman's interior vehicle camera.

**{¶52}** Upon review, we find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Appellant's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Appellant's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting Appellant of the offense.

**{¶53}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of each of the crimes for which Appellant was convicted.

**{¶54}** Accordingly, we find Appellant's convictions are not against the manifest weight or sufficiency of the evidence.

**{¶55}** Appellant's assignments of error are overruled

**{¶56}** The judgment of the Guernsey County Common Pleas Court is affirmed.

By: Wise, J.
Hoffman, P. J., and
Baldwin, J., concur.


JWW/kw  1218